## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SRI ENERGY LLC,

        *Plaintiff,*

**Case No.   25-cv-1400**

v.

RENEWABLE ENERGY ALTERNATIVES LLC;
MEDTRONIC PUERTO RICO OPERATIONS
COMPANY; JOAQUIN ALTENBERG; CLEAN
ENERGY NEXUS LLC; CLEAN ENERGY NEXUS
PR LLC; CEN JUNCOS SOLAR, LLC; CEN
JUNCOS SOLAR II, LLC; CEN PR SOLAR II,
LLC; XYZ INSURANCE COMPANY; AND ABC
INSURANCE COMPANY.

**TRIAL BY JURY DEMAND**

        *Defendants.*

*Subject Matter:*

*BREACH OF CONTRACT; UNJUST
ENRICHMENT; BREACH OF DUTY
OF GOOD FAITH
AND FAIR DEALING; TORTIOUS
INTERFERENCE WITH CONTRACT;
SUCCESSOR LIABILITY AND
DE FACTO MERGER;
CONSTRUCTIVE TRUST /
EQUITABLE LIEN; THIRD-PARTY
BENEFICIARY
LIABILITY AND PIERCING THE
CORPORATE VEIL.*

**Javier Villar Rosa**
USDC 300010
Attorney for Plaintiff
3001 Ave Isla Verde, #304
Carolina, PR 00979
Phone: (787) 300-1593
javier.villar.rosa@gmail.com
javier@itokomedia.com

## VERIFIED COMPLAINT FOR CONTRACT VIOLATIONS,
## PIERCING THE CORPORATE VEIL,
## UNJUST ENRICHMENT, TORTIOUS INTERFERENCE AND
## APPLICATION FOR EMERGENCY INJUNCTIVE RELIEF

### TO THE HONORABLE COURT:

Plaintiff SRI Energy LLC ("SRI" or "Plaintiff"), by and through undersigned counsel,

respectfully submits this Verified Complaint against Defendants Renewable Energy Alternatives

LLC ("REA"), Medtronic Puerto Rico Operations Company ("Medtronic"), Joaquin Altenberg,

Clean Energy Nexus LLC, Clean Energy Nexus PR LLC, CEN Juncos Solar LLC, CEN Juncos
Solar II LLC and CEN PR Solar II LLC (collectively "Defendants"), and alleges as follows:

## I. INTRODUCTION

1. This action arises from Defendants' unlawful interference with, and breach of contractual
   obligations related to the development, ownership, and operation of a 5.01-megawatt
   solar photovoltaic energy generation facility located in Juncos, Puerto Rico (the "CEN
   Juncos Project" or "Project").

2. This action also arises from codefendant Joaquin Altenberg's pattern of defrauding
   creditors, including the Plaintiff. Co-defendant used fraudulent inducement to procure
   services without payment. He strategically employed each of the co-defendant corporate
   entities Clean Energy Nexus LLC, Clean Energy Nexus PR LLC, CEN Juncos Solar
   LLC, CEN Juncos Solar II LLC and CEN PR Solar II LLC as his alter egos to divert
   funds and conceal assets and evade legitimate debts and escape both personal and
   corporate liability.

3. SRI has already prevailed in a Court of Law against co-defendants Joaquin Altenberg,
   and his alter ego entity Clean Energy Nexus LLC, in the case SRI Energy LLC v. Clean
   Energy Nexus LLC 22-cv-10431, tried in the District Court for the Southern District of
   New York before the Honorable Jesse Matthew Furman, and resulting in a Judgment
   favorable to Plaintiff for the amount of $2,328,906.85 plus interest. The remaining co-
   defendants named in this suit have colluded and conspired with the losing and liable
   defendants in the case cited above - also named defendants here – to defraud and divert
   funds that rightly belong to Plaintiff, via a Judgement that is now firm, final and
   unappealable. See the **Final Judgment**, registered in this District Court for the District of
   Puerto Rico, case 24-mc-00347 (PAD), and attached herein as **Exhibit A**.

4.  SRI seeks emergency injunctive relief to halt the unauthorized operation of the CEN
    Juncos Project, monetary damages exceeding $2.3 million, and additional relief as
    detailed herein.

## II. PARTIES

5.  Plaintiff SRI Energy LLC is a Michigan limited liability company with its principal place
    of business at 24301 Catherine Industrial Drive, Suite 116, Novi MI 48375. SRI is
    engaged in the business of solar energy project development, engineering, and operations.

6.  Defendant Renewable Energy Alternatives LLC is a limited liability company organized
    under the laws of Missouri, with its principal place of business at 718 W Bus Hwy 60,
    Dexter, MO, 63841. Upon information and belief, REA is engaged in renewable energy
    investment and project acquisition.

7.  Defendant Medtronic Puerto Rico Operations Company is a corporation organized under
    the laws of Puerto Rico with its principal place of business at Parque Industrial Ceiba
    Norte, 24 Road 31 HM4, Juncos, Puerto Rico 00777. Medtronic is a medical device
    manufacturing company that serves as the primary electricity off-taker and site host for
    the CEN Juncos Project.

8.  Defendant Joaquín Altenberg is a natural person who conducts business in the jurisdiction
    of Puerto Rico and who engaged in a pattern of defrauding creditors, including the
    Plaintiff, by using fraudulent inducement to procure services without payment, and by
    strategically employing each of the co-defendant corporate entities as alter egos to divert
    funds, conceal assets, and escape personal and corporate liability. It is presumed base
    upon information and belief that he has a principal place of business at 53 Calle Las
    Palmeras, Suite 601, San Juan, PR, 00901.

9.  Defendant Clean Energy Nexus LLC is a limited liability company with its principal place of business at 53 Calle Las Palmeras, Suite 601, San Juan, PR, 00901, is authorized to conduct business in Puerto Rico, and was at some point, or is currently, an alter ego of Mr. Joaquin Altenberg, and was used wholly or partially by him to defraud investors and contractors.

10. Defendant Clean Energy Nexus PR LLC is a limited liability company with its principal place of business at 53 Calle Las Palmeras, Suite 601, San Juan, PR, 00901, is authorized to conduct business in Puerto Rico, and was at some point, or is currently, an alter ego of Mr. Joaquin Altenberg, and was used wholly or partially by him to defraud investors and contractors.

11. Defendant CEN Juncos Solar, LLC is a limited liability company with its principal place of business at c/o Agustin Stahl, Carr. 174 A-10, Bayamon, PR, 00956, is authorized to conduct business in Puerto Rico, and was at some point, or is currently, an alter ego of Mr. Joaquin Altenberg, and was used wholly or partially by him to defraud investors and contractors.

12. Defendant CEN Juncos Solar II, LLC is a limited liability company with its principal place of business at c/o Agustin Stahl, Carr. 174 A-10, Bayamon, PR, 00956, is authorized to conduct business in Puerto Rico, and was at some point, or is currently, an alter ego of Mr. Joaquin Altenberg, and was used wholly or partially by him to defraud investors and contractors.

13. Defendant CEN PR Solar II, LLC is a limited liability company with its principal place of business at 53 Calle Las Palmeras, Suite 601, San Juan, PR, 00901, is authorized to conduct business in Puerto Rico, and was at some point, or is currently, an alter ego of

Mr. Joaquin Altenberg, and was used wholly or partially by him to defraud investors and contractors.

14. Defendant XYZ Insurance Company is an insurance carrier or other entity providing insurance coverage, whose true name and capacity are presently unknown to Plaintiff. Plaintiff therefore sues Defendant XYZ Insurance Company by such fictitious name and requests leave to amend this Complaint to allege its true name and capacity when ascertained.

15. Defendant ABC Insurance Company is an insurance carrier or other entity providing insurance coverage, whose true name and capacity are presently unknown to Plaintiff. Plaintiff therefore sues Defendant XYZ Insurance Company by such fictitious name and requests leave to amend this Complaint to allege its true name and capacity when ascertained.

### III. JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity of citizenship). The amount in controversy exceeds $75,000, exclusive of interest and costs.

17. Diversity of citizenship exists as Plaintiff SRI is a Michigan limited liability company whose members are citizens of Michigan; Defendant REA is a limited liability company organized outside Puerto Rico whose members are citizens of states other than Puerto Rico; Defendant Medtronic is a Puerto Rico corporation; Joaquin Altenberg is a natural person who has conducted business in the jurisdiction of Puerto Rico and appears as a Resident Agent for several of the co-defendant entities named in this suit; Clean Energy Nexus LLC, Clean Energy Nexus PR LLC, CEN Juncos Solar LLC, CEN Juncos Solar II LLC, and CEN PR Solar II LLC are all companies that are lawfully registered with the

Puerto Rico Department of State and were either created in this jurisdiction or were
created in a jurisdiction other than Plaintiff's place of origin.

18. This Court has personal jurisdiction over Defendants because they conducted substantial
business activities in Puerto Rico, specifically relating to the ownership, operation, and
electricity generation from the CEN Juncos Project located in Juncos, Puerto Rico and the
obstruction of Plaintiff's attempt to collect payment for his services and the Judgment
detailed in **Exhibit A**.

19. This Honorable Court has supplemental jurisdiction over the state law claims asserted
herein pursuant to 28 U.S.C. § 1367, as the claims arise out of the same case or
controversy as the federal claims and involve questions of Puerto Rico law, including
claims under Article 8 of Law No. 154 of August 20, 1996, 10 L.P.R.A. § 1867, known as
the Limited Liability Company Act; jurisprudence interpreting the Puerto Rico General
Corporations Act; Law No. 164 of December 16, 2009,  14 L.P.R.A. §3501 et seq.,
known as the Puerto Rico General Corporation Law of 2009, and the Puerto Rico Civil
Code, 31 L.P.R.A. § et seq.

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial
part of the events giving rise to this action occurred in the District of Puerto Rico,
including the construction, operation, and electricity generation from the CEN Juncos
Project.

## IV. FACTUAL ALLEGATIONS

A. The Joint Development Agreement and Project Development

21. On February 20, 2019, SRI entered into a Joint Development Agreement ("JDA") with
Clean Energy Nexus LLC ("CEN"), a Delaware limited liability company, for the joint
development of multiple solar energy projects, including the CEN Juncos Project. The

JDA shall be attached in a subsequent filing as a restricted and confidential document labelled **Exhibit B - JDA**.

22. Codefendant Joaquín Altenberg presented himself as the sole negotiating representative and responsible natural person for all matters relating to CEN.

23. Under the JDA, SRI provided comprehensive development services including site control establishment, interconnection approvals, permitting, environmental assessments, engineering design, and other critical development activities necessary to make the CEN Juncos Project construction-ready.

24. The JDA specifically established that SRI would receive milestone-based "Acquisition Fees" totaling $769,200 (calculated at $0.15 per watt DC for the 5.128 MW project) payable in three installments: 20% upon Project Acceptance, 40% upon Notice to Proceed ("NTP"), and 40% as a Final Payment upon project completion.

25. Section 11.5 of the JDA expressly prohibited any assignment or transfer of the agreement or project companies without consent from both parties, specifically stating: "Parties may not assign or transfer this Agreement or its rights or obligations hereunder without consideration for both parties' interest in the assignment, which should not be unreasonably withheld."

26. The JDA further provided that any assignee must "assume in writing all obligations of the Parties hereunder" and that SRI would be "released from any and all liability arising under this Agreement from and after the effective date of such assignment" only upon proper consent and assumption of obligations.

27. The execution of the JDA included the incorporation of a single purpose vehicle company, wholly owned by CEN, registered with Puerto Rico Department of State as CEN Juncos Solar LLC, here a named codefendant.

28. Based upon information and belief, the named codefendants entities Clean Energy Nexus PR LLC, CEN Juncos Solar II LLC and CEN PR Solar II LLC were also incorporated and deployed by Codefendants Joaquín Altenberg and CEN as functional instrumentalities of the CEN Juncos Project.

B. SRI's Performance and CEN's Breach

29. SRI performed substantially all of its obligations under the JDA, including: a. Securing site control through execution of rooftop lease agreements with Codefendant Medtronic; b. Obtaining interconnection approvals from Puerto Rico Electric Power Authority; c. Negotiating and executing the Power Purchase Agreement (or **"PPA"**) with Codefendant Medtronic; The PPA shall be attached in a subsequent filing as a restricted and confidential document labelled **Exhibit C – PPA**. d. Completing environmental assessments and engineering studies; e. Securing necessary permits for construction; and f. Delivering the project to construction-ready status.

30. CEN paid SRI the initial 20% Project Acceptance fee and the 40% NTP Payment but failed to pay the Final Payment of $ $268,564.00 due upon project completion.

31. By November 27, 2019, CEN executed a Membership Interest Purchase Agreement ("MIPA") transferring 100% ownership of CEN Juncos Solar LLC (the project company) to REA without obtaining SRI's required consent under Section 11.5 of the JDA.

C. REA's Knowledge and Participation in Contractual Violations

32. REA had actual knowledge of the JDA and SRI's rights therein through multiple channels:

   a. REA received and reviewed the Confidential Information Memorandum dated March 2019, which explicitly stated that "SRI Energy, LLC and Clean Energy Nexus, LLC have partnered to develop, build, and operate the system"; The

Confidential Information Memorandum Dated March 2019 shall be attached in a
subsequent filing as a restricted and confidential document labelled **Exhibit D –**
**Confidential Information Memorandum Dated March 2019**.

    b. Natalie Riley, REA's principal, was directly involved in weekly project meetings
with SRI and participated in restructuring the fee arrangement from
"Development Fee" to "Acquisition Fee";

    c. REA received drafts of and participated in negotiations regarding the Power
Purchase Agreement and other project documents; and

    d. REA was intimately involved in project financing and contractor payment
processes.

33. REA knew that CEN's transfer required SRI's consent under Section 11.5 of the JDA, yet
REA proceeded with the acquisition without obtaining such consent or ensuring CEN's
compliance with the assignment restrictions.

34. REA knew that as assignee, it would be required to assume CEN's obligations under the
JDA, including payment of the outstanding Final Payment to SRI, yet REA deliberately
failed to assume these obligations.

35. Despite REA's knowledge of SRI's outstanding payment rights and the assignment
restrictions, REA proceeded to acquire the CEN Juncos Project and has operated it for its
own benefit while refusing to compensate SRI.

36. Upon information and belief, Defendant XYZ Insurance Company issued an insurance
policy or policies that provide coverage applicable to the claims and causes of action
alleged herein, including but not limited to coverage for liability arising out of the acts or
omissions of Codefendant REA.

37. REA's continued and deliberate failure to remedy this known contractual breach while simultaneously collecting multi-year revenue from a 20-year Power Purchase Agreement developed by SRI amounts to calculated, ongoing appropriation of SRI's commercial value. This is not a case of a disputed invoice; it is a long-running and escalating breach in which REA has reaped over $4.5 million in cumulative energy sales since taking unauthorized control of the CEN Juncos Project.

38. The unjustified enrichment of REA continues daily, while SRI remains unpaid for its work product and denied the benefit of the bargain. Every kilowatt-hour sold, every monthly energy invoice paid by Medtronic, and every dollar collected by REA is a renewed act of contractual theft and unjust enrichment. These continuing violations entitle SRI not only to damages but to equitable relief to prevent further unjust gain at SRI's expense.

D. Medtronic's Participation and Interference

39. Medtronic had knowledge of SRI's development role and contractual rights through its direct negotiations with SRI regarding site lease terms and Power Purchase Agreement provisions during 2019.

40. Medtronic knew that SRI had not consented to the transfer of the project to REA, yet Medtronic continued to perform under electricity purchase arrangements with REA as the new project owner.

41. Medtronic's continued performance under the Power Purchase Agreement with the unauthorized assignee REA constituted substantial assistance to REA's breach of the assignment restrictions and interference with SRI's contractual rights. The Power Purchase Agreement (or "PPA") shall be attached in a subsequent filing as a restricted and confidential document labelled **Exhibit C - PPA**.

42. Medtronic has received substantial benefits from the solar electricity generation without compensation to SRI, despite knowing that SRI was the original developer whose efforts made the project possible.

43. Upon information and belief, Defendant XYZ Insurance Company issued an insurance policy or policies that provide coverage applicable to the claims and causes of action alleged herein, including but not limited to coverage for liability arising out of the acts or omissions of Codefendant Medtronic.

E. REA and Medtronic's collusion with Joaquin Altenberg and corporate entities controlled by him to defraud Plaintiff

44. Codefendant Joaquin Altenberg has engaged in a pattern of defrauding creditors, including the Plaintiff.

45. Codefendant Joaquin Altenberg used fraudulent inducement to procure services without payment.

46. Codefendant Joaquin Altenberg strategically employed each of the co-defendant corporate entities as his alter egos or co-conspirators to divert funds and conceal assets.

47. Codefendant Joaquin Altenberg used these corporate structures to evade legitimate debts and escape both personal and corporate liability.

48. Codefendant REA knew or should have known that Codefendant Joaquin Altenberg's conduct would result in losses and damages for Plaintiff and still chose to enter business dealings with him.

49. Codefendant REA knew or should have known that Codefendant Joaquin Altenberg's failed to pay Plaintiff and chose to enter business dealings with him anyway.

50. Codefendant Medtronic knew or should have known that Codefendant Joaquin Altenberg's conduct would result in losses and damages for Plaintiff and chose to enter business dealings with him anyway.

51. Codefendant Medtronic knew or should have known that Codefendant Joaquin Altenberg's failed to pay Plaintiff and chose to enter business dealings with him anyway.

52. Codefendants Clean Energy Nexus LLC, Clean Energy Nexus PR LLC, CEN Juncos Solar LLC, CEN Juncos Solar II LLC and CEN PR Solar II LLC were each deliberately employed by Codefendant Joaquin Altenberg as instrumentalities to harm Plaintiff.

53. Codefendants Clean Energy Nexus LLC, Clean Energy Nexus PR LLC, CEN Juncos Solar LLC, CEN Juncos Solar II LLC and CEN PR Solar II LLC were created, maintained, and operated for the purpose of misleading Plaintiff, obstructing payment for services rendered, and shielding Altenberg from personal liability.

54. Codefendants Clean Energy Nexus LLC, Clean Energy Nexus PR LLC, CEN Juncos Solar LLC, CEN Juncos Solar II LLC and CEN PR Solar II LLC were utilized as part of a coordinated scheme to divert funds, frustrate Plaintiff's ability to collect on legitimate debts, and inflict financial damage upon Plaintiff.

55. Codefendants Clean Energy Nexus LLC, Clean Energy Nexus PR LLC, CEN Juncos Solar LLC, CEN Juncos Solar II LLC and CEN PR Solar II LLC were used interchangeably and without regard to corporate formalities, ensuring Plaintiff would be left without a viable avenue for recovery.

F. Ongoing Harm and Need for Provisional Injunctive Relief

56. *Continuous Operational Violations and Economic Benefit Diversion.* The CEN Juncos Project has operated continuously, generating substantial electricity sales revenue exceeding $1.5 million annually based on the 20-year Power Purchase Agreement at

$0.119 per kWh with 2% annual escalation, while providing ongoing economic benefits
to REA through energy sales and operational cost savings to Medtronic through reduced
utility expenses.

57. *Daily Accrual of Irreparable Contractual Harm*. Each day of continued operation without
SRI's consent constitutes an ongoing violation of Section 11.5 of the Joint Development
Agreement, which expressly prohibits assignment without SRI's approval and requires
assignees to assume all contractual obligations, resulting in daily accrual of unjust
enrichment damages that compound geometrically as REA retains operational control
over SRI's development work product.

58. *Inadequacy of Legal Remedies and Judgment Collectability Issues*. SRI obtained a
default judgment against CEN on July 17, 2023, in the amount of $2,328,906.85 in SRI
Energy LLC v. Clean Energy Nexus LLC, Case No. 1:22-cv-10431-JMF (S.D.N.Y.), but
CEN has dissolved operations and lacks sufficient assets to satisfy the judgment,
rendering monetary relief from the original contracting party effectively worthless and
demonstrating the inadequacy of damages as a remedy.

59. *Preservation of Operational Continuity and Revenue Stream Protection*. REA and
Medtronic continue to derive substantial economic benefit from SRI's specialized
development services—including site control establishment, Power Purchase Agreement
negotiation, interconnection approval, and permit acquisition—while SRI remains
entirely uncompensated, creating ongoing disruption to SRI's business operations and
competitive position that cannot be adequately quantified or remedied through
retrospective monetary damages alone.

60. *Balanced Interests and Sentence Effectiveness Requirements*. Under Puerto Rico Rule 56
governing provisional remedies, injunctive relief is necessary to: (a) preserve the

effectiveness of any final judgment recognizing SRI's contractual rights and ownership
interests; (b) maintain balanced interests between parties by preventing further unjust
enrichment pending adjudication of SRI's claims; and (c) ensure substantial justice by
halting ongoing violations that compound daily while SRI pursues legal remedies against
parties who continue profiting from SRI's uncompensated development work.

## V. CAUSES OF ACTION

## COUNT I: BREACH OF CONTRACT AGAINST
## REA, CEN, AND CEN JUNCOS SOLAR LLC

61. SRI realleges and incorporates by reference all preceding paragraphs.

62. The JDA created enforceable contractual obligations, including Section 11.5's
    requirement that any assignment of project companies obtain consent from both parties
    and that assignees assume all contractual obligations.

63. REA, CEN and CEN JUNCOS SOLAR LLC breached the JDA by accepting assignment
    without SRI's consent and by failing to assume CEN's payment obligations to SRI as
    required under Section 11.5.

64. SRI has been damaged by REA, CEN and CEN JUNCOS SOLAR LLC 's breach in an
    amount exceeding $2.3 million, representing unpaid development fees, shared cost
    savings, interest, and additional damages.

65. REA's breach is continuing as long as REA operates the CEN Juncos Project without
    having properly assumed CEN and CEN JUNCOS SOLAR LLC's contractual obligations
    to SRI.

WHEREFORE, SRI demands judgment against REA for breach of contract, including monetary
damages, injunctive relief, and such other relief as the Court deems just and proper.

## COUNT II: UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

66. SRI realleges and incorporates by reference all preceding paragraphs.

67. SRI conferred substantial benefits upon Defendants by performing comprehensive development services that made the CEN Juncos Project viable and operational, including site control, permitting, engineering, and construction-ready delivery.

68. Defendants have received and retained these benefits through their ownership and operation of the CEN Juncos Project, including ongoing electricity generation revenues (REA) and reduced energy costs (Medtronic) and the unlawful use of corporate instrumentalities such as the other named LLC codefendants.

69. Defendants' retention of these benefits is unjust under the circumstances, particularly given their knowledge of SRI's role and contractual rights, and their participation in or facilitation of the improper assignment.

70. Defendants have been unjustly enriched at SRI's expense in an amount to be proven at trial but exceeding $2.3 million.

71. The enrichment enjoyed by REA is not speculative—it is quantifiable and substantial. Based on the 5.01 MW system and the PPA rate of $0.119/kWh with 2% annual escalators, REA has collected or accrued millions of dollars in revenue over the past four years, directly attributable to SRI's project development efforts. REA has retained these benefits in bad faith despite full knowledge of the obligations it refused to assume.

72. This enrichment is unjust, material, and ongoing. The Court should treat the accumulation of these proceeds as subject to constructive trust or disgorgement, and SRI respectfully demands the return of all such funds as part of its quest to seek restitution and recovery.

WHEREFORE, SRI demands restitution from Defendants in an amount equal to the benefits they have unjustly received, plus interest and such other relief as the Court deems just and proper.

## COUNT III: BREACH OF DUTY OF GOOD FAITH
## AND FAIR DEALING AGAINST REA AND MEDTRONIC

73. SRI realleges and incorporates by reference all preceding paragraphs.

74. The JDA created an implied covenant of good faith and fair dealing between the parties under Article 1210 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3375.

75. REA and Medtronic breached this duty by accepting assignment of the project while knowing it was required to obtain SRI's consent and assume CEN's obligations yet failing to do so and instead attempting to benefit from SRI's work without compensation.

76. REA and Medtronic's conduct frustrated SRI's reasonable expectations under the JDA and deprived SRI of the benefits of its bargain.

77. SRI has been damaged by REA and Medtronic's breach of the duty of good faith and fair dealing in an amount exceeding $2.3 million.

WHEREFORE, SRI demands judgment against REA and Medtronic for breach of the duty of good faith and fair dealing, including monetary damages and such other relief as the Court deems just and proper.

## COUNT IV: TORTIOUS INTERFERENCE WITH
## CONTRACT AGAINST DEFENDANTS REA AND MEDTRONIC

78. SRI realleges and incorporates by reference all preceding paragraphs.

79. A valid contract existed between SRI and CEN pursuant to the JDA, requiring CEN to obtain SRI's consent for any assignment and to ensure assignees assumed contractual obligations.

80. Defendants REA and Medtronic had knowledge of the JDA and its assignment restrictions through their direct involvement in project negotiations and receipt of project documentation.

81. Defendants REA and Medtronic intentionally interfered with the JDA by proceeding with the assignment (REA) and continued performance under project agreements with the unauthorized assignee (Medtronic) without ensuring compliance with the assignment requirements.

82. Defendants' REA and Medtronic interference was improper and lacked justification, as they could have ensured compliance with the JDA's requirements but chose to proceed in violation thereof.

83. Defendants' contractual interference is continuous and ongoing.

84. SRI has been damaged by Defendants' tortious interference in an amount exceeding $2.3 million, representing lost payments and additional consequential damages.

WHEREFORE, SRI demands judgment against Defendants for tortious interference with the JDA, including monetary damages and such other relief as the Court deems just and proper.

## COUNT V: SUCCESSOR LIABILITY /
## DE FACTO MERGER AGAINST REA

85. SRI realleges and incorporates by reference all preceding paragraphs.

86. REA's acquisition of CEN Juncos Solar LLC and CEN Juncos Solar II LLC constituted a de facto merger or mere continuation of CEN's business enterprise under Puerto Rico law and applicable federal common law principles.

87. The following factors establish de facto merger liability:

    a.  Continuity of enterprise: REA continued the identical solar energy generation business at the same location with the same assets, contracts, and operational structure previously conducted by CEN;

    b.  Continuity of shareholders/ownership interests: REA acquired 100% ownership of the project company that was the primary asset and business focus of CEN's renewable energy operations;

    c.  Cessation of ordinary business: CEN ceased meaningful business operations following the transfer to REA and subsequently became defunct;

    d.  Assumption of obligations necessary for continuation: REA necessarily assumed operation of power purchase agreements, interconnection arrangements, and ongoing operational obligations to continue the business; and

    e.  Common identity of directors and management: Upon information and belief, REA's principals exercised control over the project company's operations in the same manner as CEN's prior management.

88. REA's acquisition was structured to avoid CEN's liabilities while continuing to benefit from the same business operations, particularly CEN's unpaid obligations to SRI under the JDA.

89. Under the doctrine of successor liability, REA is liable for CEN's contractual obligations to SRI, including the unpaid Final Payment and related damages under the JDA.

90. The mere continuation doctrine applies because REA acquired substantially all of CEN's assets related to the CEN Juncos Project and continued the same business with the same operational structure, making REA liable for CEN's debts and obligations arising from that business.

91. SRI has been damaged by REA's successor liability in an amount exceeding $2.3 million, representing CEN's unpaid contractual obligations and additional consequential damages.

WHEREFORE, SRI demands judgment against REA under theories of successor liability and de facto merger, including monetary damages equal to CEN's unpaid obligations, interest, and such other relief as the Court deems just and proper.

### COUNT VI: CONSTRUCTIVE TRUST / EQUITABLE LIEN AGAINST REA

92. SRI realleges and incorporates by reference all preceding paragraphs.

93. REA holds legal title to the CEN Juncos Project and its revenues subject to SRI's equitable interest arising from SRI's development work and unpaid contractual entitlements.

94. The elements for imposing a constructive trust are satisfied:

    a.  Confidential or fiduciary relationship: REA's participation in project development and knowledge of the JDA created obligations of fair dealing toward SRI;

    b.  Promise or agreement: The JDA's assignment provisions required REA to assume CEN's payment obligations to SRI as a condition of acquiring the project;

    c.  Transfer in reliance on promise: CEN's development and transfer of the project relied on the understanding that assignees would satisfy existing contractual obligations;

    d.  Unjust enrichment: REA has been unjustly enriched by receiving the benefits of SRI's development work without satisfying the related payment obligations; and

    e.  Breach of duty: REA breached its equitable duties by accepting the benefits while refusing to honor the corresponding obligations.

95. REA acquired the CEN Juncos Project with actual knowledge of SRI's outstanding payment rights and contractual interests, making REA's retention of project benefits without satisfying SRI's claims unconscionable.

96. Equity requires imposition of a constructive trust over the CEN Juncos Project and its revenues to prevent REA's unjust enrichment at SRI's expense.

97. Alternatively, SRI is entitled to an equitable lien on the CEN Juncos Project and its revenues in the amount of SRI's unpaid contractual entitlements, providing security for SRI's claims while preserving REA's remaining ownership interests.

98. The constructive trust or equitable lien should secure payment of all amounts owed to SRI under the JDA, including the unpaid Final Payment, shared cost savings, interest, and related damages.

WHEREFORE, SRI demands that this Court impose a constructive trust or equitable lien in favor of SRI over the CEN Juncos Project and its revenues and award such other equitable relief as the Court deems just and proper.

## COUNT VII: THIRD-PARTY BENEFICIARY

## LIABILITY AGAINST REA

99. SRI realleges and incorporates by reference all preceding paragraphs.

100.     REA became bound by the JDA's obligations as a third-party beneficiary who accepted the benefits of the contract while having knowledge of its terms and obligations.

101.     REA's status as a liable third-party beneficiary is established by:

   a. Acceptance of contract benefits: REA received and retained the primary benefit of the JDA—a fully developed, construction-ready solar project—without satisfying the corresponding payment obligations;

b. Knowledge of contract terms: REA had actual knowledge of the JDA's terms, including the assignment restrictions and payment obligations, through its participation in project development and receipt of project documentation;

c. Active participation in contract performance: REA participated in contract implementation through involvement in weekly project meetings, contractor payments, and project restructuring decisions;

d. Assumption of contract position: REA stepped into CEN's contractual position by acquiring the project company and continuing identical business operations; and

e. Equitable estoppel: REA's conduct in accepting project benefits while knowing of SRI's unpaid claims estops REA from denying obligations under the contract.

102. Under the doctrine of third-party beneficiary liability, when a non-party receives substantial benefits from a contract with knowledge of its terms and obligations, equity may impose liability to prevent unjust enrichment and ensure contract performance.

103. REA's acceptance of the project benefits created implied assumptions of the corresponding contractual obligations, particularly the payment duties owed to SRI for development services that created those benefits.

104. Alternatively, REA is liable under quasi-contractual principles as a party who voluntarily accepted the benefits of SRI's performance under the JDA while having knowledge of the corresponding payment obligations.

105. REA's conduct is continuous and ongoing.

106. SRI has been damaged by REA's failure to honor the contractual obligations associated with the benefits REA received, in an amount exceeding $2.3 million.

WHEREFORE, SRI demands that this Court to pay SRI for its fees and damages and award such other equitable relief as the Court deems just and proper.

## COUNT VIII: PIERCING THE CORPORATE VEIL

107.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

108.     Defendants Clean Energy Nexus LLC, Clean Energy Nexus PR LLC, CEN Juncos Solar LLC, CEN Juncos Solar II LLC, and CEN PR Solar II LLC (collectively, the "Corporate Defendants") are separate legal entities duly organized under the laws of Puerto Rico or other applicable jurisdictions.

109.     Notwithstanding their separate legal existence, the Corporate Defendants have been so dominated and controlled by Codefendant Joaquin Altenberg that their separate personalities have ceased to exist, and adherence to the fiction of separate corporate existence would sanction a fraud, promote injustice, or lead to an inequitable result.

110.     The Corporate Defendants were used by Joaquin Altenberg as mere instrumentalities or alter egos to commit wrongdoing, including but not limited to fraud, diversion of funds, and avoidance of contractual and legal obligations to Plaintiff.

111.     The Corporate Defendants' corporate formalities have been disregarded, and the entities have been used to perpetrate a fraud or injustice against Plaintiff, resulting in injury and damages to Plaintiff.

112.     Under Puerto Rico law - including but not limited to Article 8 of Law No. 154 of August 20, 1996, 10 L.P.R.A. § 1867; Law No. 164 of December 16, 2009, 14 L.P.R.A. §3501 et seq., known as the Puerto Rico General Corporations Act of 2009; jurisprudence interpreting the Puerto Rico General Corporations Act of 2009; and the Puerto Rico Civil Code, 31 L.P.R.A. § et seq. - the corporate veil may be pierced where necessary to prevent injustice or fraud.

113.     Accordingly, Plaintiff seeks a judgment piercing the corporate veil of the

Corporate Defendants so that Codefendant Joaquin Altenberg may be held personally

liable for the actions, debts, and obligations of the Corporate Co-Defendants with respect

to Plaintiff's claims.

114.     As a direct and proximate result of the Corporate Co-Defendants' and Joaquin

Altenberg's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order piercing the

corporate veil of Clean Energy Nexus LLC, Clean Energy Nexus PR LLC, CEN Juncos Solar

LLC, CEN Juncos Solar II LLC, and CEN PR Solar II LLC; Hold Joaquin Altenberg personally

liable for all damages and obligations owed to Plaintiff; Award Plaintiff costs, interest, and

attorneys' fees as permitted by law; and grant such other and further relief as the Court deems

just and proper.

## VI. APPLICATION FOR PRELIMINARY INJUNCTION

115.     SRI realleges and incorporates by reference all preceding paragraphs.

116.     SRI requests immediate emergency relief in the form of a Preliminary Injunction

against Renewable Energy Alternatives LLC, Medtronic Puerto Rico Operations

Company, CEN Juncos Solar LLC and CEN Juncos Solar II LLC, their agents, servants,

employees, and all persons acting in concert with them, ordering:

   a.  Immediate cessation of all electricity generation activities at the CEN Juncos

       Project;

   b.  Prohibition on the sale, transfer, or distribution of electricity generated by the

       CEN Juncos Project;

   c.  Prohibition on the storage of electricity generated by the CEN Juncos Project;

    d.  Prohibition on any person or entity profiting from or receiving economic benefit from electricity generation at the CEN Juncos Project;

    e.  Shuttering of the CEN Juncos Project operations until such time as the contractual violations alleged herein are remedied; and

    f.  Such other relief as the Court deems necessary to preserve the status quo and prevent ongoing irreparable harm.

A. Likelihood of Success on the Merits

117.    SRI is likely to succeed on its breach of contract claims because:

    a.  The JDA clearly prohibited assignment without consent from both parties;

    b.  REA admittedly acquired the project without obtaining SRI's consent;

    c.  REA failed to assume CEN's contractual obligations as required;

    d.  The contract terms are unambiguous and REA's violations are undisputed;

    e.  Plaintiff has already prevailed against codefendant CEN in a matter substantially and materially related this case; and

    f.  Codefendant Joaquín Altenberg is a manifest grifter who willingly defrauds investors and contractor by devising a scheme of corporate structures to function as his alter egos

118.    SRI is likely to succeed on its unjust enrichment claims because Defendants have received substantial benefits from SRI's development work under circumstances making retention unjust, particularly given their knowledge of SRI's rights.

B. Irreparable Harm

119.    SRI faces ongoing irreparable harm that cannot be adequately compensated by monetary damages alone:

   a.  Continuing daily violations of SRI's contractual rights with each day of
       unauthorized operation;

   b.  Permanent loss of development opportunities and business relationships resulting
       from unpaid obligations;

   c.  Damage to SRI's reputation in the renewable energy development community;

   d.  Inability to collect meaningful damages from the now-defunct CEN;

   e.  Unique nature of the project making monetary damages inadequate to restore
       SRI's position; and

   f.  the continuous and ongoing use of fraudulent corporations created for the purpose
       of stifling investors and contractors.

C. Balance of Hardships

   120.      The balance of hardships favors SRI because:

      a.  Defendants acquired and currently operate the project with knowledge of the
          contractual violations.

      b.  Defendants can remedy the violations by compensating SRI and assuming proper
          contractual obligations.

      c.  SRI performed all required development work and is entitled to compensation;

      d.  Allowing continued unauthorized operation rewards contractual breaches and
          unjust enrichment; and

      e.  Plaintiff has already prevailed in a matter intrinsically related to this case as levied
          against CEN in a federal court of law in the State of New York.

D. Public Interest

   121.      The public interest favors granting injunctive relief because:

a. Enforcement of contractual obligations promotes commercial certainty in renewable energy development.

b. Preventing unjust enrichment encourages proper business practices; and

c. Deterring contractual violations supports the rule of law in commercial transactions.

d. Sanctioning the fraudulent use of corporate entities reinforces the norms and values of a sound business framework and upholds the tenets of fair dealing in Puerto Rican society.

## VII. JURY DEMAND

122.    Plaintiff demands trial by jury.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff SRI Energy LLC respectfully requests that this Honorable Court:

A. **Preliminary Injunction**: Grant a Preliminary Injunction against the co-defendants Renewable Energy Alternatives LLC, Medtronic Puerto Rico Operations Company, CEN Juncos Solar LLC and CEN Juncos Solar II LLC following appropriate notice and hearing, continuing the relief set forth above pending final resolution of this action ordering the:

a. Immediate cessation of all electricity generation at the CEN Juncos Project;

b. Prohibition on sale, transfer, or distribution of electricity from the Project;

c. Prohibition on storage of electricity generated by the Project;

d. Prohibition on any economic benefit or profit from Project operations; and

e. Complete shuttering of Project operations

**B.  Permanent Relief**

    a.  Enter judgment in favor of SRI on all counts alleged herein;

    b.  Award monetary damages in an amount to be proven at trial but in no event less than $2,328,906.85, plus pre- and post-judgment interest;

    c.  Award restitution in an amount equal to all benefits Defendants have received from SRI's development work;

    d.  Enter a permanent injunction requiring Defendants to cease all unauthorized operations of the CEN Juncos Project until proper contractual compliance is achieved;

    e.  Order Defendants to provide a full accounting of all revenues, costs, and profits associated with the CEN Juncos Project since 2019, including energy sales to Medtronic, for purposes of restitution, tracing, and disgorgement.

    f.  Declare that each day of continued operation of the CEN Juncos Project without compliance with the JDA constitutes a separate act of contractual breach, unjust enrichment, and conversion, and order REA to disgorge all revenues received from the CEN Juncos Project since acquisition, subject to tracing and restitution under equitable principles.

    g.  Issue a declaratory judgment affirming Plaintiff's continuing equitable and contractual right to receive compensation from all future electricity sales derived from the CEN Juncos Project until its contractual entitlement is fully satisfied.

    h.  Recognize and enforce the final judgment entered in SRI Energy LLC v. Clean Energy Nexus LLC, No. 22-cv-10431-JMF (S.D.N.Y.) as enforceable against any successor, alter ego, or transferee entity under the doctrines of successor liability, veil piercing, and equitable estoppel.

C. **Additional Relief**

  i. Award SRI its reasonable attorneys' fees and costs incurred in prosecuting this action;

  j. Award such other and further relief as the Court deems just and proper under the circumstances.

## VERIFICATION

I, **Prasad Gullapalli**, President of SRI Energy LLC, hereby verify that I have read the foregoing Complaint and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

*gvrprasad*

         **Prasad Gullapalli**
       **President of SRI Energy LLC**

Respectfully submitted,

By: /s Javier Villar Rosa
**Javier Villar Rosa**

PRUSDC 300010
3001 Ave Isla Verde, #304
Carolina, PR 00979
Phone: (787) 300-1593
javier.villar.rosa@gmail.com
javier@itokomedia.com

*Lead attorney to appear Pro Hac Vice*:

**Martin Shepherd**
Michigan Bar License No. 65331
801 W. Ann Arbor Trail
Suite 230
Plymouth, MI 48170
Phone: (248) 469-4086
mshepherd@mavacy.com